# UNITED STATES COURT OF INTERNATIONAL TRADE

### *Before*: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

|  |  |
|---|---|
| FUJIFILM NORTH AMERICA CORPORATION, FUJIFILM CORPORATION, AND FUJIFILM PRINTING PLATE (CHINA) CO. LTD., | ) ) ) ) ) |
| Plaintiffs, | ) ) Court No. 24-00251 |
| v. | ) ) <u>NON-CONFIDENTIAL</u> <u>VERSION</u> |
| UNITED STATES, | ) ) *Confidential information* |
| Defendant, | ) *removed from pages 9-10, 14,* ) *and 22.* |
| EASTMAN KODAK COMPANY, | ) ) |
| Defendant-Intervenor. | ) ) |

## PLAINTIFFS' FUJIFILM REPLY BRIEF

Daniel L. Porter
James P. Durling
William Sjoberg
Gina M. Colarusso
John Taishu Pitt

**Pillsbury Winthrop Shaw Pittman LLP**
1200 17th St, N.W.
Washington, D.C. 20036
202-663-8140

**November 17, 2025**

*Counsel for Fujifilm*

## TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

ARGUMENT ..................................................................................................... 4

I.    THIS COURT'S STANDARD OF REVIEW NEEDS TO RECOGNIZE *LOPER BRIGHT* ..................................................................................................... 4

II.   THE MAJORITY'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE NOT IN ACCORDANCE WITH LAW ....... 4

    A.    The Decision To Include Fujifilm Greenwood Within The Domestic Industry Was Contrary to Law And Unsupported By Substantial Evidence 4

        1.    The domestic industry determination was contrary to law ............... 5

        2.    The Majority's analysis was unsupported by substantial evidence ... 6

            a.    Greenwood was shielded from import competition ............... 7

            b.    Failure to properly analyze skewing ...................................... 9

            c.    The treatment of other factors is also unsupported by substantial evidence ............................................................. 10

    B.    The Majority's Volume Finding Was Contrary to Law and Unsupported by Substantial Evidence ................................................................... 12

        1.    The determination effectively ignored the statutory requirement of significance ..................................................................................... 12

        2.    Defendant continues to ignore substantial evidence that contradicts the volume determination .................................................................. 14

    C.    The Majority's Conclusion of Adverse Price Effects Was Contrary to Law and Unsupported by Substantial Evidence .................................... 15

1.    The Majority's reliance on underselling while essentially ignoring the lack of any price depression or suppression is contrary to law .. 15

2.    The subsidiary conclusions in the Majority's price effects analysis are not supported by substantial evidence ........................................ 19

   a.    Importance of price ................................................................ 19

   b.    Substitutability ....................................................................... 20

   c.    Purchaser testimony about their decisions ............................ 21

   d.    Evidence of underselling ........................................................ 22

D.    The Majority's Conclusion of Adverse Impact from Subject Imports Was Contrary to Law and Unsupported by Substantial Evidence ..................... 25

1.    The Majority misapplied the statutory standard to determine adverse impact ................................................................................................. 25

2.    The Majority finding of adverse impact is not based on substantial evidence ............................................................................................... 26

CONCLUSION AND PRAYER FOR RELIEF ............................................................. 28

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allied Mineral Prods., Inc. v. United States,*
  28 C.I.T. 1861 (2004) ....................................................................... 7

*Altx, Inc. v. United States,*
  26 C.I.T. 709 (2002) ....................................................................... 13

*Altx, Inc. v. United States,*
  370 F.3d 1108 (Fed. Cir. 2004) ....................................................... 18

*Amanda Foods v. United States,*
  807 F. Supp. 2d 1332 (Ct. Int'l Trade 2011) .................................. 11

*Grupo Indus. Camesa v. United States,*
  85 F.3d 1577 (Fed. Cir. 1996) ......................................................... 17

*ITG Voma Corp. v. U.S. Int'l Trade Comm'n,*
  253 F. Supp. 3d 1339 (Ct. Int'l Trade 2017), *aff'd*, 753 F. App'x 913 (Fed. Cir. 2019)
  ....................................................................................................... 17

*Jiangsu Senmao Bamboo & Wood Indus. Co., Ltd. v. United States,*
  762 F. Supp. 3d 1275 (Ct. Int'l Trade 2025) .................................. 11

*Loper Bright Enterprises v. Raimondo,*
  603 U.S. 369 (2024)................................................................*passim*

*Nucor Corp. v. United States,*
  28 C.I.T. 188 (2004) ....................................................................... 13

*Nucor Corp. v. United States,*
  414 F.3d 1331 (Fed. Cir. 2005) ................................................. 13, 19

*OCP S.A. v. United States,*
  658 F. Supp. 3d 1297 (Ct. Int'l Trade 2023) ............................ 13, 14

*OCTAL Inc. v. United States,*
  539 F. Supp. 3d 1291 (Ct. Int'l Trade 2021) .................................. 16

*Suramerica De Aleaciones Lamindas, C.A. v. United States,*
  44 F.3d 978 (Fed. Cir. 1994) ........................................................... 11

*United Steel Workers v. United States,*
  348 F. Supp. 3d 1328 (Ct. Int'l Trade 2018) ............................ 17, 19

*Universal Camera v. N.L.R.B.*,
    340 U.S. 474 (1951)................................................................................... 8

*USX Corp. v. United States*,
    655 F. Supp. 487 (Ct. Int'l Trade 1987) ...................................................... 12

*Wabtec Corp. v. United States*,
    No. 23-00157, 2025 Ct. Intl. Trade LEXIS 143 (Oct. 8, 2025).............................*passim*

## ADMINISTRATIVE DETERMINATIONS

*Aluminum Lithographic Printing Plates from China and Japan*, Inv. Nos. 701-TA-694
    and 731-TA-1641-1642, USITC Pub. 5559 (Final) (Nov. 2024)................................... 5

*Aluminum Lithographic Printing Plates from China and Japan*, Inv. Nos. 701-TA-694
    and 731-TA-1641-1642, USITC Pub. 5475 (Prelim.) (Nov. 2023) .............................. 11

*Certain Freight Rail Couplers and Parts Thereof from China*,
    Inv. Nos. 701-TA-682 and 731-TA-1592, USITC Pub. 5438 (Final) (July 2023).......... 7

## STATUTES

19 U.S.C. § 1516a............................................................................................. 6

19 U.S.C. § 1677(4)(B) ................................................................................. 1, 5

19 U.S.C. § 1677(7)(B)(i)(II) ................................................................. 2, 15, 24

19 U.S.C. § 1677(7)(C)(i).......................................................................... 1, 12

19 U.S.C. § 1677(7)(C)(ii) ..................................................................... 2, 15, 18

19 U.S.C. § 1677(7)(C)(iii) .......................................................................... 2, 25

19 U.S.C. § 1677(7)(J).................................................................................... 25

## OTHER AUTHORITIES

S. Rep. No. 96-249 (1979), reprinted *in* 1979 U.S.C.C.A.N. 381.................................... 13

*Evaluate*, MERRIAM-WEBSTER.COM, www.Merriam-Webster/dictionary/evaluate
    (visiting Nov. 10, 2025)................................................................................ 16

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Commission's determination of injury suffers serious legal flaws and lacks a proper foundation of substantial evidence.  It rested largely on the fact that when Fujifilm closed its U.S. factory, Fujifilm retained its existing customers rather than surrender them entirely to Kodak.  This focus on the volume that Fujifilm maintained to its existing customers does not provide a permissible legal or factual basis to find injury.

**Contrary to Law**

*Loper Bright* admonishes courts not to defer to agency interpretations and instead requires reaching a judicially determined best reading of statutory limitations on agency authority.  Rather than engage seriously with the statute, Defendant largely ignores statutory language in favor of older precedents that excessively deferred to overly permissive interpretations of the statutory limitations on finding injury.

**Domestic Industry**: The Commission had to determine whether "appropriate circumstances" existed to exclude Greenwood from the domestic industry, 19 U.S.C. §1677(4)(B), but instead rewrote the statute to replace this required factual inquiry with a strict liability rule that anytime a company closes its U.S. factory and begins importing from its other facilities there is necessarily a distortion.  The statute does not allow such a *per se* rule to replace actual factual analysis.

**Volume**: The Commission had to assess whether the volume of subject imports, or any increase in that volume, is "significant," 19 U.S.C. §1677(7)(C)(i), yet essentially

ignored this statutory requirement in favor of another *per se* rule that any absolute increase in import volume must be significant.

**Price**: The Commission also had to consider the "effect of {subject imports} on prices in the United States," 19 U.S.C. §1677(7)(B)(i)(II), by "evaluating the effect of imports" on domestic prices through a two-part framework including both underselling "and" price depression/suppression. 19 U.S.C. §1677(7)(C)(ii). Yet the Majority did not "evaluate the effect" on domestic prices and ignored half of the mandated two-part framework.

**Impact**: Finally, the Commission had to find "decline" and "negative effects" regarding statutory factors, 19 U.S.C. §1677(7)(C)(iii), yet the Majority's "Kodak could have done better" approach impermissibly reads positive trends as somehow negative because they were not positive enough.

### Unsupported by Substantial Evidence

Regarding the evidence here, Defendant repeatedly stresses the need not to reweigh evidence, but that does not eliminate the need to consider the evidence critically, testing whether the evidence actually supports the conclusions being reached. This review must focus on the determination as written, not as Defendant wishes it had been written. Defendant also incorrectly considers each discrete factual issue in isolation, an approach that ignores the ways in which the different pieces of evidence interact with each other.

**Domestic Industry**: Defendant effectively concludes that Fujifilm's U.S. selling arm intentionally competed with itself vis-à-vis the supply of aluminum lithographic

printing plates ("ALPs").  Such conclusion is both logically absurd and factually baseless.  The record shows that Fujifilm sold the same models to the same purchasers, albeit with different countries of origin, in the same year and in consecutive years.  That is how an orderly wind down and transition works.  The Commission's analysis fails, which is precisely what the court found last month in *Wabtec Corp. v. United States,* No. 23-00157, 2025 Ct. Intl. Trade LEXIS 143 (Oct. 8, 2025), which focused on the same two factors at issue here, and found nearly identical analysis by the Commission to be unsupported by substantial evidence.

**Volume**: Defendant simplistically assumes that Kodak could have supplied all the volume of Fujifilm's U.S. closed factory, ignoring that Kodak did not make certain products and could not realistically replace many Fujifilm products.  Such simplistic analysis does not establish the significance of the import volume.

**Price**: Defendant repeatedly focuses on the evidentiary tail, allowing it to wag the rest of the evidentiary dog.  Stressing price as the third most important factor, Defendant ignores that quality and availability were two more important factors.  Stressing the one-third of purchasers who found substitutability, Defendant ignores the two-thirds that did not.  Stressing the two purchasers who made decisions because of price ignores the seventeen purchasers who did not.  Pointing to some underselling among the top ten customers ignores the evidence about the other customers and the evidence of increasing prices that exceeded costs.

**Impact**: Like its discussion of price, Defendant does not consider the record evidence as a whole, instead repeatedly invoking the legally flawed standard that Kodak

could have done better but for subject imports.  But that truism does not address the evidence that Kodak's condition improved even while imports increased, particularly given the decline in overall demand.

## ARGUMENT

### I.    THIS COURT'S STANDARD OF REVIEW NEEDS TO RECOGNIZE *LOPER BRIGHT*

Plaintiffs specifically argued that this Court's review of aspects of the Majority's decision as contrary to law needs to recognize the Supreme Court's *Loper Bright* decision.  Plaintiff Fujifilm's Rule 56.2 Memo. in Support of Motion for Judgment on the Agency Record, ECF Nos. 35-36 ("PlBr.") at 10-11.  Somewhat surprisingly, Defendant addressed the applicable standard of review without citing even once the *Loper Bright* decision.  *See* Defendant Mem. in Opposition to Plaintiff's Mot. for Judgment on the Agency Record, ECF Nos. 48-49 ("DBr.") at 14-16.  Defendant's implicit argument that this Court should ignore *Loper Bright* is wrong.  Old statutory interpretations require a fresh look in light of *Loper Bright*.  *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400, 412 (2024).

### II.    THE MAJORITY'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS OTHERWISE NOT IN ACCORDANCE WITH LAW

#### A.    The Decision To Include Fujifilm Greenwood Within The Domestic Industry Was Contrary to Law And Unsupported By Substantial Evidence

The determination not to exclude Greenwood from the domestic industry was both contrary to law and unsupported by substantial evidence.  Defendant and Defendant-

Intervenor[1] ignore or misinterpret the law and facts in a failed attempt to prop up an otherwise incorrect determination.

The statute required the Commission to determine based on facts, not application of *per se* rules, whether "appropriate circumstances" existed to exclude Greenwood from the domestic industry. 19 U.S.C. §1677(4)(B).  And the key facts here were:

(1)     Prior to the period of investigation (the "POI"), Fujifilm made the global decision to replace Greenwood's U.S. production with subject imports through an orderly wind down (Commission Staff Report — Final and Preliminary (Oct. 2024) ("*Staff Rpt.*") at Table 3.12 (C.R. 163));

(2)     Such wind down had nothing to do with subject import competition (*Final Determination* at 11 (P.R. 103));[2] and

(3)     FNAC was the exclusive Fujifilm U.S. supplier of both Greenwood-produced ALPs and all imported subject merchandise (*Staff Rpt.* at 5.5 (C.R. 163)).

This specific *factual* lens should guide the Court's review of the arguments in this case. These facts simply do not logically or reasonably allow the Commission findings on shielding and whether the data would be skewed.

### 1.     The domestic industry determination was contrary to law

The final domestic industry determination was contrary to law.  The determination ignored the best interpretation (under *Loper Bright*) of "appropriate circumstances."

---

[1] Eastman Kodak Co. Response Br. in Opposition to Plaintiff's Mot. for Judgment on the Agency Record, ECF Nos. 51-52 ("D-IntBr.").

[2] *Aluminum Lithographic Printing Plates from China and Japan*, USITC Pub. 5559 (Final) (Nov. 2024) ("*Final Determination*") (P.R. 103).  Plaintiffs hereinafter refer to the Commission Majority's final opinion as:  Views of the Commission (Nov. 14, 2024) ("*Majority*") (C.R. 170) and Dissenting Views of Comm. Johanson (Nov. 14, 2025) ("*Dissent*") (C.R. 171).

"Appropriate" does not mean whatever the Commission wishes and does not allow applying per se rules rather than factual analysis specific to each case. The Majority's factual analysis should have reflected the legislative history that the provision sought to avoid distortions in the data. PlBr. at 18-19. In response, Defendant and Kodak argue that *Loper Bright* allows this Court to ignore this underlying the statutory paradigm and conclude that, because Congress utilized the phrase "appropriate circumstances," Congress intended for the Commission to have unfettered discretion in its analysis of "appropriate circumstances." This is just wrong. The statutory term "appropriate" explicitly seeks to cabin what would otherwise be unlimited discretion.

Moreover, the determination incorrectly addressed the issue of whether excluding the Fujifilm data would skew the data for the rest of the industry. According to the Majority analysis of that factor, it need not even bother to conduct this factual analysis.

> Simply put, where a domestic producer replaces domestic production with imports, excluding that producer from the domestic industry would skew the data in terms of the domestic industry's performance.

*Majority* at 16 (C.R. 170); DBr. at 22; D-IntBr. at 17-18. Such a strict liability standard ignores the specific facts and is thus contrary to the statute as it fails to conform to the applicable statutory standard for judicial review. *See* 19 U.S.C. §1516a(b)(1)(B)(i).

## 2. The Majority's analysis was unsupported by substantial evidence

The Commission's analysis of each of the five factors was unsupported by substantial evidence. The Court can draw guidance from the recent opinion in *Wabtec*,

which addressed the <u>same two factors</u> at issue here.  *Compare Majority* at 14-15

(emphasis added)

> {(}As discussed below, the record indicates that
> {Greenwood's} domestic production was **<u>not shielded</u>** from
> competition with subject imports during the POI and that its
> exclusion **<u>would skew</u>** the domestic industry data{)}

*with Certain Freight Rail Couplers and Parts Thereof from China*, Inv. Nos. 701-TA-682

and 731-TA-1592, USITC Pub. 5438 (Final) (July 2023) at 18 (emphasis added)

> {(}Nevertheless, the record shows that *** domestic
> production was **<u>not shielded</u>** from competition with subject
> imports during the POI and that its exclusion **<u>would skew</u>** the
> domestic industry data . . . .{)}};

*See Wabtec,* 2025 Ct. Intl. Trade LEXIS 143, at *31-*32.  As set forth below, the same

flaws found in *Wabtec* fatally infect the Commission determination here.

### a.    Greenwood was shielded from import competition

The Commission's analysis of whether Greenwood was shielded from subject

imports — "the most significant factor . . . in making the appropriate circumstances

determination" — is unsupported by substantial evidence.  *Allied Mineral Prods., Inc. v.*

*United States*, 28 C.I.T. 1861, 1864 (2004).  The determination that Greenwood was not

shielded relied on two facts: (1) Greenwood's decline in production, shipments, market

share, and financial performance corresponded with an increase in the volume of

cumulated subject imports, *Majority* at 15; DBr. at 18, and (2) FNAC imported the same

products produced by Greenwood implying that such facts demonstrated competition.

*Majority* at 15; DBr. at 19.  As noted by the *Wabtec* decision, however, such facts could

just as easily support Fujifilm's statement that, during the POI, its primary interest was in

importation.  *See Wabtec*, 2025 Ct. Intl. Trade LEXIS 143, at *33.  This is particularly true given the undisputed fact that the decision to close Greenwood occurred before the POI.  *Staff Rpt*. at Table 3.12 (C.R. 163).

The Commission cannot blindly select Greenwood's financial performance as evidence of increased competition from subject imports without acknowledging the record facts that fairly detract from the weight of its decision, particularly when Fujifilm unmistakenly set forth on the record the reason it ceased production had absolutely nothing to do with subject imports.  *Id.* at *36 (citing *Universal Camera v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).

Fujifilm explained that its cumulated subject imports *complemented* its production of the domestic like product instead of *competing* with such production. *Staff Rpt*. at Table 3.12 (C.R. 163).  It is undisputed that a single Fujifilm entity, FNAC, was consistently the sole seller of <u>both</u> Fujifilm-Greenwood-produced ALPs and Fujifilm-Japan/Fujifilm-China produced ALPs.  *Id.* at 5.5.  The Commission effectively concluded that FNAC was intentionally competing with itself vis-à-vis the ALP sales.  Such conclusion is both logically absurd and factually baseless.  Instead, the only explanation supported by the record is that, during the orderly wind down, FNAC had to sell the same models to same purchasers, albeit with different countries of origin, in the same year and also in consecutive years.  That is how an orderly transition works.  Contrary to Defendant's argument, DBr. at 18, there is nothing abnormal or injurious about such actions.  Indeed, there is simply no basis to find Greenwood was *forced* by subject import competition to replace its domestic production with subject imports.

Importantly, Greenwood did not report any lost sales or lost revenue. *Staff Rpt.* at 5.15 (P.R. 89). As *Wabtec* explains, "{t}he Commission did not recognize, let alone account for {Greenwood's} statements regarding a lack of any injury to its domestic production." *See Wabtec*, 2025 Ct. Intl. Trade LEXIS 143, at *34.

Equally important is that, in a sales comparison involving [     ] distinct Fujifilm product codes FNAC sold to its 10 largest customers, the average unit values of subject imports were greater than or equal to those of the same domestic like product model in [     ] percent of the comparisons. *See* FNAC's U.S. Importers' Questionnaire Response (July 23, 2024) at Attachment C (C.R. 74). It is unreasonable to find competition from subject imports based on such facts.

As such, the Commission's conclusion that Greenwood was not shielded from subject imports was unsupported by substantial evidence as it failed to establish a rational connection between the facts found and the choice made. *See Wabtec*, 2025 Ct. Intl. Trade LEXIS 143, at 33.

### b.   Failure to properly analyze skewing

Regarding the factor of whether excluding the Greenwood data would skew the data for the rest of the industry, the Majority asserted that "excluding {Greenwood} from the domestic industry would mask declines in the domestic industry's market share, output, and financial performance . . . particularly given that {Greenwood} was [

]." *Majority* at 15; DBr. at 22.

Although Greenwood was the [                                    ], this was the first year of the three-year POI and Greenwood was just [     ] percentage points larger

than Kodak in that year. *Staff Rpt*. at Table 3.7 (C.R. 163). Moreover, this isolated fact ignores the more important facts that Greenwood ceased production in March 2002 (not even midway through the POI) and over the entire POI Greenwood only accounted for [      ] percent of U.S. production; hardly a bellwether for the industry. As *Wabtec* recognized, "{w}hile excluding some domestic production from the investigation would certainly remove the capacity and other financial data related to that production, it would not inevitably skew the *remaining* data." *Wabtec*, 2025 Ct. Intl. Trade LEXIS 143, at *36 (emphasis added). "Exclusion of data is not synonymous with skewing data." *Id.* at *35.

The Commission failed to analyze whether excluding Greenwood's data would skew Kodak's data, *i.e.*, the data for the *rest* of the industry, particularly given that excluding Greenwood's data would still (1) leave the majority of domestic production accounted for in the Commission's analysis, *Id.* at *35-*36, and (2) leave a domestic industry comprised of the only domestic manufacturer that is claiming material injury by reason of subject imports. *Id.* at *36.

### c.    The treatment of other factors is also unsupported by substantial evidence

Regarding the ratio of FNAC's subject imports to Greenwood's U.S. production, the Commission stated only that "{t}he ratio of these imports to Greenwood's domestic production was [      ] percent in 2021 and [      ] percent in 2022." *Majority* at 13. This recitation hardly "exemplifies robust reasoning." *See* D-IntBr. at 17. The failure to account for this record evidence that fairly detracts from the weight of its decision

renders that decision unsupported by substantial evidence. *Suramerica De Aleaciones Lamindas, C.A. v. United States*, 44 F.3d 978, 985 (Fed. Cir. 1994).

As to whether Fujifilm's primary interest was in Greenwood's domestic production or FNAC's subject imports, the Commission <u>completely changed its position</u> without explanation. *Compare Aluminum Lithographic Printing Plates from China and Japan*, USITC Pub. 5475 (Prelim.) (Nov. 2023) ("*Preliminary Determination*") at 15 (P.R. 41)

> {(} we agree that Fujifilm's primary interest appears to lie in importation{)}

*with Majority* at 14

> {(}its primary interest was in domestic production, until it ceased such production in March 2022{)}.

None of the underlying facts had changed, but somehow the conclusion did. "When an agency changes its position suddenly and without explanation or does not take account of legitimate reliance on prior interpretation, the agency's action may be arbitrary, capricious or an abuse of discretion." *Amanda Foods v. United States*, 807 F. Supp. 2d 1332, 1343 (Ct. Int'l Trade 2011) (citation and internal quotations omitted).

In sum, Fujifilm is not asking to reweigh the evidence as alleged by both Defendant and Defendant-Intervenor. DBr. at 22; D-IntBr. at 16. Rather, Fujifilm submits that the Commission abused its discretion by rendering a decision that was not supported by substantial evidence and represented an improper analytic approach. *See Jiangsu Senmao Bamboo & Wood Indus. Co., Ltd. v. United States*, 762 F. Supp. 3d 1275, 1282 (Ct. Int'l Trade 2025).

**B.    The Majority's Volume Finding Was Contrary to Law and Unsupported by Substantial Evidence**

**1.    The determination effectively ignored the statutory requirement of significance**

Contrary to Defendant's argument, DBr. at 24, Fujifilm does not argue the Majority had to "reach additional findings in the context of its volume analysis;" rather, Fujifilm argues that merely citing an increase in subject import volumes effectively ignored the statute's instruction to determine whether such volume is "significant."

Despite Defendant and Defendant-Intervenor's claims to the contrary, the statute requires the Commission to do more than note the absolute volume of subject import volumes during the POI. The plain text of the statute at 19 U.S.C. §1677(7)(C)(i) requires the Commission to assess whether the volume of subject imports, or any increase in that volume, is "significant," meaning "having meaning" or "having or likely to have influence or effect: Important". PlBr. at 23. If it were enough to find an existence of, or absolute increase in, subject imports, as Defendant suggests, the statute would not require that imports be "significant." Without assessing subject import volume in the context of the market and the unique dynamics at play during the period, the Commission's finding did not comply with the statute's requirement.

"Congress, this court, and ITC itself have repeatedly recognized that it is the *significance* of a quantity of imports, and not absolute volume alone, that must guide ITC's analysis under section 1677(7)." *USX Corp. v. United States*, 655 F. Supp. 487, 490 (Ct. Int'l Trade 1987) (internal citation omitted). As the legislative history confirms, whether a particular volume of imports is "significant" varies across industries and

circumstances, thus the context is key to the Commission's analysis.  S. Rep. No. 96-249, at 88 (1979), reprinted *in* 1979 U.S.C.C.A.N. 381, 474.

Although Defendant argues that the Commission need not consider the conditions of competition when analyzing subject import volumes, DBr. at 27, it claims that the Commission did so, allegedly evidenced by the Commission's acknowledgement of the relevant conditions of competition in the section immediately preceding its volume analysis.  "The Commission 'does not comply with its statutory mandate by simply describing various conditions of competition in isolation' but rather the Commission must apply its findings regarding the conditions of competition to its analysis of the three statutory factors" including subject import volumes.  *OCP S.A. v. United States*, 658 F. Supp. 3d 1297, 1319 (Ct. Int'l Trade 2023) (internal citation omitted); *see also Nucor Corp. v. United States*, 28 C.I.T. 188, 207 (2004), *aff'd*, 414 F.3d 1331 (Fed. Cir. 2005). The Commission had to explain how, given the particular conditions of competition— particularly Fujifilm's pre-POI decision to shift supply sources for its U.S. customers — the volume of subject imports, which were almost entirely Fujifilm's own imports, were "meaningful" or "likely to have an influence or effect; important" (i.e., "significant"). The Commission failed to do so.

Defendant attempts to distinguish *OCP* and *Altx*, but Defendant misunderstands these precedents.  In those cases, the Court found that Commission findings, including with respect to volume, that were premised on mere conjecture, or theoretical notions of what was possible in the market at issue were legally deficient.  *OCP*, 658 F. Supp. 3d at 1313-14, 1317-20; *Altx, Inc. v. United States,* 26 C.I.T. 709, 717-18 (2002).  *See also*

PlBr. at 25-26.  Plaintiffs cited these cases to show that the Commission's volume finding

must take into account the unique and actual conditions of competition.  *See* PlBr. at 24-

26.  That the factual circumstances here may be different is precisely the point — because

factual circumstances differ from case to case, it is insufficient for the Commission to

consider only the absolute volume or absolute increase in subject imports; it must assess

the volume *within the context* of the conditions of competition that are distinctive to the

affected industry to determine whether it is significant given the conditions of the market.

*See OCP*, 658 F. Supp. 3d at 1312-13.  There is no evidence that the Commission did so

when it concluded that subject import volumes were significant.  Defendant cannot make

up for the Commission's shortcomings now by referring the Court to other sections of the

determination and claiming that as evidence of the consideration that went into its

volume finding.

### 2.    Defendant continues to ignore substantial evidence that contradicts the volume determination

Although Defendant maintains the Commission need only assess the absolute

volume of subject imports, it also claims that the increase in cumulated subject import

volume from 2021 to 2023 was [     ] less than the excess capacity of the domestic

industry in 2023.  DBr. at 27.  Contrary to Defendant and Defendant-Intervenor's

assertions, the Commission did not consider the domestic industry's capacity, its ability

to satisfy demand, or any other unique market condition, in its *volume* analysis.  *Cf.* DBr.

at 27; D-IntBr. at 19.  Even if it had, Defendant (again) ignores the record evidence

regarding the specific product types imported and supplied by Fujifilm and the existing

contractual relationships between Fujifilm and its U.S. customers, despite the shift in factory sourcing. *See* PlBr. at 26-28.

In ignoring these facts, just as the Commission did during the underlying proceeding, Defendant fails to engage with the substantial record evidence detracting from its conclusion that the volume and increase in subject imports was "significant."

### C. The Majority's Conclusion of Adverse Price Effects Was Contrary to Law and Unsupported by Substantial Evidence

#### 1. The Majority's reliance on underselling while essentially ignoring the lack of any price depression or suppression is contrary to law

Given the Supreme Court's recent decision stressing the importance of carefully interpreting statutory constraints on agency discretion, Plaintiffs' brief argued that the Majority's decision was contrary to law based on specific statutory arguments. PlBr. at 29-35. Defendant's effort to defend the ITC's flawed statutory interpretation of price effects with outdated precedents fails.

Most fundamentally, Defendant does not address the statutory language specifying the analysis needed to establish an "effect" on prices. DBr. at 39-43. The statute requires the Commission consider the "effect of {subject imports} on prices in the United States," 19 U.S.C. §1677(7)(B)(i)(II), and clarifies the framework for "evaluating the effect of imports" on domestic prices, using the conjunctive "and" to describe a two-part framework. 19 U.S.C. §1677(7)(C)(ii). The term "and" confirms that all of these perspectives on price — both price depression/suppression in subsection (I), and underselling in subsection (II) — must be actually <u>evaluated</u> as part of reaching the

ultimate conclusion about "the effect" of imports on domestic prices.  To "evaluate"

something means to "determine the significance … usually by careful appraisal and

study."  *Evaluate*, MERRIAM-WEBSTER.COM, www.Merriam-

Webster/dictionary/evaluate.  Yet, Defendant says nothing about this statutory language,

and instead rewrites the statutory requirements, by (1) focusing on other factors to

dismiss the need to address the degree of any price depression/suppression when finding

find an "effect … on prices" and (2) implicitly replacing the statutory conjunctive "and"

with Defendant's preferred disjunctive "or."  The Majority's discussion of price

depression/suppression and what it shows about the "effect" of imports on domestic

prices is superficial at best, *Majority* at 36, and not the careful appraisal contemplated by

the statutory term "evaluate."  There is zero discussion about what the facts on price

depression/suppression mean for any ultimate conclusion about the "effect" of imports on

domestic prices.

　　　　Rather than present any statutory argument, Defendant relies exclusively on case

law predating *Loper Bright*.  DBr. at 40; D-IntBr. at 21-25.  Given *Loper Bright*'s

admonition that courts should not defer to agency interpretations and must instead reach a

judicially determined best reading of the statute, the older case law is not dispositive.

The statutory limits on Commission findings of adverse price effects must be respected,

and any dated interpretations must be reconsidered and corrected.  None of Defendant's

cases presented a meaningful statutory interpretation, instead largely rely on even older

case law.  For example, the decision in *OCTAL Inc. v. United States*, 539 F. Supp. 3d

1291 (Ct. Int'l Trade 2021), the court does not present any statutory interpretation and

instead relies heavily on a 1996 Federal Circuit decision that itself presented no statutory interpretation and instead relied entirely on substantial evidence. *Compare id*. at 1302-03 (citing *Grupo Indus. Camesa v. United States*, 85 F.3d 1577, 1582 (Fed. Cir. 1996)) *with Grupo Indus. Camesa*, 85 F.3d at 1581 ("supported by other factors amounting to substantial evidence"), and 1582 (the "affirmative injury determination is supported by substantial evidence"). Similarly, in *ITG Voma Corp. v. U.S. Int'l Trade Comm'n*, 253 F. Supp. 3d 1339 (Ct. Int'l Trade 2017), *aff'd*, 753 F. App'x 913 (Fed. Cir. 2019), the court addressed many issues but not the statutory requirements to find adverse price effects. The court addressed five main issues, and price effects was not among them. *Id.* The court addressed prices indirectly as part of analyzing impact but noted specifically that the Commission record showed that "there was an overall decline in domestic tire prices." *Id*. at 1348-63. The court also cited the same Federal Circuit decision in *Grupo* that was based entirely on substantial evidence, not what the statute allows. *Id.* at 1361. Defendant's arguments here just underscore the need to view older case law very cautiously, and to ensure robust interpretation of those statutory limitations.

Moreover, while citing other cases, Defendant does not address the more directly relevant decision in *United Steel Workers v. United States*, 348 F. Supp. 3d 1328 (Ct. Int'l Trade 2018), that strongly supports Plaintiffs' statutory argument, PlBr. at 32 n.3. In that case, the court invalidated a Commission determination about price effects based on price depression/suppression that had ignored the separate statutory prong of underselling. The court explained: "{b}y merely relying on its finding for price suppression and price depression, the Commission conflated the two-pronged analysis

mandated by the statute." *Id.* at 1335-36.  Although here the converse was true — the Majority relied on underselling and ignored price suppression/depression — the essential points about the primacy of the statute itself and the statutory conjunctive "and" requiring analysis of both prongs apply here.

No one disputes the Commission can consider lost sales.  DBr. at 40-41.  But this point does not address the <u>statutory</u> argument about what must be included in the analysis of <u>price effects</u>.  Moreover, Defendant's argument ignores that here the unconfirmed lost sale allegations dwarf in magnitude the confirmed lost sales.  *Majority* at 43 n.165 (C.R. 170).  The key point is that the complete record evidence shows that most allegations were rejected and lost sales thus do not support finding adverse price effects.  PlBr. at 43-45.  It makes no sense to focus on the small fraction that were confirmed and dismiss the much larger portion that were not confirmed.

Nor is it enough to collect data on and allude to price depression and suppression without explaining more.  DBr. at 41-42; Def-Int.Br. at 22-23.  The statute requires more than just passively collecting data about price depression and suppression.  The requirement to "consider" is situated within a provision that requires "<u>evaluating</u> the effect of imports of such merchandise on prices" based on an explicit two-part analysis of both underselling <u>and</u> depression/suppression.  19 U.S.C. §1677(7)(C)(ii) (emphasis added).  Nothing in the cases cited by Defendant suggests anything contrary.  In *Altx*, the Federal Circuit did not address the statutory requirements for analyzing price effects and addressed a much narrower argument about the role of dumping margins in economic models when assessing impact.  *Altx, Inc. v. United States*, 370 F.3d 1108, 1121-24 (Fed.

Cir. 2004).  And in *Nucor*, the Federal Circuit was not providing statutory analysis when it drafted the topic sentence that Defendant now cites.  *Nucor Corp. v. United States*, 414 F.3d 1331, 1339 (Fed. Cir. 2005).

This statutory framework is precisely why the court in *United Steel Workers* correctly found that the Commission must respect the "two-pronged analysis mandated by the statute."  348 F. Supp. 3d at 1335-36.  The Majority here did not address both prongs.

> **2.    The subsidiary conclusions in the Majority's price effects analysis are not supported by substantial evidence**

Regardless of how this Court decides the legal argument about the requirement to make findings about price depression/suppression, those facts remain part of the overall record that this Court must address as a whole under the substantial evidence standard.

> **a.    Importance of price**

Plaintiffs explained that the record evidence shows price is not the most important factor, and cited specific points of evidence the Majority did not discuss in any meaningful way.  PlBr. at 36-37.  Defendant's response just reinforces Plaintiffs' argument.

Defendant concedes that price is not the most important factor, and that price was, at most, one of many important factors, DBr. at 30, but never meaningfully addresses these other factors.  This concession immediately highlights what the Majority said about the non-price factors, which was very little.  Defendant points to where the Majority acknowledged the contrary evidence, DBr. at 30, D-IntBr. at 26, but mentioning contrary

facts just highlights the Majority's failure actually to evaluate this evidence. Price may be an important factor, but there must be some significance to the fact — as the Majority acknowledged — that two other factors were more important. The Majority basically repeated a truism — that price is always one of the important factors — and then acknowledged but never addressed the implication of other factors mattering more.

Given the other evidence here (discussed below) that reinforces the lesser importance of price, this discussion of the purchaser statements about the greater importance of other factors, such as quality and availability, undermines the Majority's analysis that relied so heavily on the importance of price.

### b.    Substitutability

Similarly, Plaintiffs noted the evidence that indicated limited substitutability and again faulted the Majority's failure to engage with this contrary evidence. PlBr. at 37-38. Defendant's response actually highlights the flaws in the Majority's analysis.

First, Defendant stresses the Majority relied primarily on testimony from Kodak, DBr. at 32, testimony that attempted to distract the Commission from attention to key purchaser testimony about substitutability. Kodak had every incentive to downplay the difficulty of switching plate suppliers; the purchasers — the parties actually trying to make the substitution work — provided much more probative evidence about their own practical experience trying to use different types of plates.

Second, Defendant acknowledges that 15 out of 23 purchasers confirmed the lack of substitutability because plates from a different manufacturer cannot easily be substituted on their equipment, DBr. at 32, even as Defendant tried to present this adverse

fact in the most favorable light by citing the minority that disagreed with the view held by two thirds of the purchasers.  Citing the testimony by one-third while rejecting the contrary testimony by the remaining two-thirds without any explanation does not represent a proper substantial evidence evaluation of the price effects.

More broadly, the Majority noted, but then essentially ignored, other key facts.  In particular, the majority of purchasers stressed the importance of non-price factors, and most purchasers confirmed they made their decision based on the manufacturer, *Majority* at 29 — evidence that strongly attenuated substitutability and that reinforced the other purchaser testimony that quality was the most important factor, *Id.* at 30.  Defendant nowhere explains why this evidence as a whole — at best, mixed and weak evidence of high substitutability — logically or reasonably leads to a finding of moderate-to-high degree of substitutability.

### c.    Purchaser testimony about their decisions

Plaintiffs stressed the compelling evidence that so many purchasers testified they did not switch purchasers because of price.  PlBr. at 44-45.  Of the purchasers who bought subject imports, 17 of 19 confirmed they did not buy imports because of lower price.  *Id.*  Defendant's response underscores the extent to which the Majority side-stepped any evaluation of this adverse evidence.

Defendant acknowledges this adverse evidence, but then argues the Majority was free to ignore it.  DBr. at 37.  Defendant cites to the Majority noting of these facts, but then essentially ignoring the implications.  Citing the testimony by 10 percent of

purchasers while rejecting the contrary testimony by the other 90 percent without any explanation does not represent a proper evaluation of the price effects.

Moreover, that the Commission need not find lost sales to make an affirmative determination, DBr. at 37, does not mean such evidence is irrelevant to the court's critical review of a finding of price effects. To the contrary, this evidence reinforces the points discussed above about price being less important, and substitutability being limited. Yet the Majority simply noted and then ignored this key evidence.

Instead, Defendant relies on the purchasing decisions by two of the larger purchasers, [       ] and [       ]. PlBr. at 37-39, Def-IntBr. at 32-33. But in reiterating the Majority's conclusions, Defendant does not address what these customers actually said about their purchasing decisions, their reasons for purchasing from Fujifilm, or the role of declining domestic demand for plates. Regardless, the evidence still shows that the overwhelming majority of purchasers testified that price was not driving their decisions. The Majority drew a different conclusion by ignoring the substantial evidence to the contrary.

### d.   Evidence of underselling

Before turning to the specific arguments about underselling, it is worth recapping the other evidence relevant to the alleged adverse price effects. These facts are not in dispute:

- Domestic prices for all three specific pricing products increased, *Majority* at 48;

- Domestic prices increased faster than costs, allowing Kodak to become more profitable, *Id.*;

- Price was one of the important factors, but the vast majority of purchasers — 20 of 23 — stated that either quality or availability was more important than price. *Id.* at 30;

- The strong majority of purchasers — 15 of 23 — testified about the limited substitutability between plates from different manufacturers, *Id.* at 29; and

- The vast majority of purchasers — 17 of 19 — confirmed they did not buy imports because of lower prices, *Id.* at 43.

The Majority failed to explain what this contrary evidence meant for the existence of adverse price effects.

As suggested by the Dissent, the overall pricing data, in fact, was reliable. Plaintiffs explained that the two companies reported prices on a comparable basis. PlBr. at 38-39. Defendant now cites footnote 152 in the *Majority*, DBr. at 34, for something the footnote does not address at all — the exclusion of any services from the reported price. The footnote says nothing about Kodak's exclusion for services. Moreover, given the magnitude and extent of overselling, the Majority made no effort to evaluate whether any reporting issues would have mattered at all. The Majority was reaching for excuses to reject the pricing data typically used in every case that could not be reconciled with its desired theory of the case.

Moreover, the difference in customer mix just underscores the importance of considering the overall pricing data. Defendant argues customer mix justifies ignoring the overall pricing data, DBr. at 33-34, Def-IntBr. at 30-31, but this argument has it backwards. Focusing on a subset of the pricing data means the Majority ignored the effects of the attenuated competition caused by the significantly different customer bases. That attenuated competition and relative lack of underselling can be fully reconciled with

- 23 -

the increasing domestic prices that more than covered costs, and with the extensive purchaser testimony that they did not make their decisions because of price. Majority views about the effect of underselling cannot be reconciled with the actual overall domestic price trends or the overwhelming majority of the purchasers' testimony.

Even if one were to discount the overall pricing data, the top ten customer pricing data provides at most weak and inconsistent support for the Majority views about price effects. There may have been some underselling, but Kodak was still able to raise its prices and actually maintained relatively higher volume for the large customers, notwithstanding any underselling. PlBr. at 40. Defendant's response is telling, focusing entirely on <u>volume</u>, and saying nothing about domestic <u>prices</u>. DBr. at 36 ("lose sales and market share"; "not gaining more of the sales"). The statutory requirement is to find any "effect of imports … on <u>prices</u>." 19 U.S.C. §1677(7)(B)(i)(II) (emphasis added). The Majority cannot provide substantial evidence of price effects by repeating its findings about volume.

Contrary to Defendant's claim, the top ten customer data also allows meaningful inferences about the other pricing to customers outside the top ten. Defendant claims there is no "reliable price information" about other prices, DBr. at 36, but that statement is incorrect. By definition, the total pricing data minus the top ten customer pricing data gives information about smaller customers not within the subset of top ten customers. Moreover, the inference about overselling drawn from the non-top ten customer price data can be confirmed from the data about overall average units. *Dissent* at 8 (C.R. 171).

Taken as a whole, the record evidence on underselling shows the lack of any adverse price effects. Domestic prices were both (1) increasing and (2) increasing faster than costs. Purchasers overwhelmingly testified that other factors matter more than price, and that they made their decisions for non-price reasons. Even the underselling data that the Majority relied on so heavily actually shows the lack of price effects, since for its top ten customers Kodak was still able to raise its prices and maintain volume for the large customers, notwithstanding any underselling. The Majority analysis of price effects collapses into the existence of some underselling for some customers and utterly fails to show any adverse "effect of imports … on prices" as required by the statute.

> ### D. The Majority's Conclusion of Adverse Impact from Subject Imports Was Contrary to Law and Unsupported by Substantial Evidence

>> #### 1. The Majority misapplied the statutory standard to determine adverse impact

Plaintiffs stressed that the Majority's approach ignored the statutory requirement to find <u>declines</u>, and not just the failure to do even better. PlBr. at 46-47. Rather than address this statutory argument, Defendant essentially presents a substantial evidence argument. DBr. at 43-44. The Majority's "could have done better" approach contradicted the requirement in 19 U.S.C. §1677(7)(C)(iii) to find "decline" and "negative effects." Some older cases may have blessed such an approach, but past deference does not meet the more demanding standard of *Loper Bright*. Nor does the provision about profitability in 19 U.S.C. §1677(7)(J) change this statutory analysis, DBr. at 43, D-IntBr. at 37-38, since that provision did not change the basic framework and uses

"merely" to direct the Commission not to make profitability a *per se* rule requiring an affirmation determination.

> ### 2.     The Majority finding of adverse impact is not based on substantial evidence

Plaintiffs stressed several problems with the Majority's approach to substantial evidence: confusing cause with effect, lack of correlation, ignoring declining demand, downplaying non-price price factors, and the failure to consider all the factors as a whole. PlBr. at 48-55.  None of Defendant's responses salvage the Majority's flawed approach.

The Majority confused cause and effect, notwithstanding Defendant's effort to rehabilitate the Majority views.  Defendant doubled down on the "Kodak could have done better" theory.  DBr. at 44-45, D-IntBr. at 38.  But under that theory, any scenario other than Kodak capturing all of the volume from the closed Fujifilm Greenwood facility would necessarily be adverse impact to Kodak.  That is Plaintiffs' point — the Majority reasoning targeted the closure of Greenwood, a decision made prior to the POI for reasons other than imports.

The Majority also ignored the lack of correlation.  Defendant, yet again, repeats that Kodak could have done better "than would otherwise have been the case."  DBr. at 45.  This point does not really address the lack of correlation — Kodak's improving finances and stronger than expected shipments in a declining market — both fundamentally at odds with any effort to find injury "by reason of" subject imports.  Nor does Kodak's "smart revenue" strategy, DBr. at 46, explain away the lack of correlation.

Kodak's ability to charge higher prices and improve its profitability just underscores the lack of any adverse effects by reason of subject imports.

The Majority also acknowledged but then ignored the effect of declining demand. Plaintiffs presented an extended argument about the failure to consider declining demand, PlBr. at 51-53, but Defendant simply repeats what the Majority found.  In particular, Defendant downplays the overall trend that undermines the Majority theory, and focuses on the post-2022 trends, DBr. at 48, without addressing the other reasons for Kodak's upswing in 2022.  PlBr. at 52.  The Majority cannot rely on post-2022 trends without addressing the specific reasons for the uptick in 2022 that placed the post-2022 trend in a fundamentally different light.

The Majority also failed to address the substantial evidence about non-price factors.  As noted above in Section II.C.2.a., mentioning contrary evidence is not the same thing as actually evaluating that evidence.  The Majority's rationale never grappled with the evidentiary significance of other factors being more important than price and purchasers testifying their decisions were not based on price.

Finally, we note the Majority failed to consider how all of these factors interacted and reinforced each other.  PlBr. at 54-55.  Defendant did not respond to this argument.  *See* DBr. at 42-50.  It is telling that Defendant chose not to address the internal inconsistency of the various points.  The Majority blames lower priced imports even though the lack of correlation and declining demand better explains the volume trends, and even though most purchasers confirmed they did not buy imports because of a lower

price.  The Majority's explanation fails as internally inconsistent and unsupported by the record as a whole.

## CONCLUSION AND PRAYER FOR RELIEF

Fujifilm respectfully requests this Court find the Majority's final affirmative injury determination was unlawful and not supported by substantial evidence.


/s/ Daniel L. Porter

Daniel L. Porter
James P. Durling
William Sjoberg
Gina M. Colarusso
John Taishu Pitt

**Pillsbury Winthrop Shaw Pittman LLP**
1200 17th St, N.W.
Washington, D.C. 20036
202-663-8140

November 17, 2025                    *Counsel for Fujifilm*

**CERTIFICATION OF COMPLIANCE WITH CHAMBERS PROCEDURE 2(B)(1)**

This brief has been prepared utilizing Microsoft 365 Word using a proportionally spaced typeface 13-point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief as set forth in 2(B)(1) of the Chambers Procedures (*i.e.*, the table of contents, table of authorities, and counsel's signature block), I hereby certify that this brief contains 6,998 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Daniel L. Porter

Daniel L. Porter
James P. Durling
Matthew P. McCullough
William Sjoberg
Gina M. Colarusso
John Taishu Pitt

**Pillsbury Winthrop Shaw Pittman LLP**
1200 17th St, N.W.
Washington, D.C. 20036
202-663-8140

*Counsel for Fujifilm*