*Public Version*

### Views of the Commission

By decision and order dated February 18, 2026, the U.S. Court of International Trade remanded the Commission's final affirmative injury determinations in *Aluminum Lithographic Printing Plates from China and Japan*, Inv. Nos. 701-TA-694 and 731-TA-1641–1642 (Final), USITC Pub. No. 5559 (Nov. 2024).[1] Upon consideration of the remand order and based on the evidence in the record of these investigations, the Commission determines again that an industry in the United States is materially injured by reasons of imports of aluminum lithographic printing plates ("ALPs") from China and Japan that are sold in the United States at less than fair value and subsidized by the government of China.[2]

## I.    Background

On November 12, 2024, the Commission determined that a domestic industry was materially injured by reason of subject imports from China and Japan that were sold in the United States at less than fair value and subsidized by the government of China.[3] In January 2025, Plaintiffs Fujifilm North America Corporation ("FNAC"), Fujifilm Printing Plate (China) Co. Ltd. ("Fujifilm China"), and Fujifilm Corporation ("Fujifilm Japan") (collectively, "Fujifilm") filed

---

[1] *Fujifilm N. Am. Corp. v. United States*, Court No. 24-00251, 2026 WL 464687, Slip Op. 26-17 (Ct. Int'l Trade Feb. 18, 2026) ("Slip Op.").

[2] Commissioner David S. Johanson again determines that an industry in the United States is not materially injured or threatened with material injury by reason of subject imports of ALPs from China and Japan. He joins with and adopts the related parties analysis in section III below, except as noted.

[3] *Aluminum Lithographic Printing Plates from China and Japan: Determinations*, 89 Fed. Reg. 90,737 (Nov. 18, 2024); *Aluminum Lithographic Printing Plates from China and Japan*, Inv. Nos. 701-TA-694 and 731-TA-1641–1642 (Final), USITC Pub. No. 5559 (Nov. 2024); Confidential Views of the Commission, EDIS Doc. 837217 at 3 ("Views").

Chair Karpel, Commissioner Kearns, and Commissioner Schmidtlein reached affirmative determinations, while Commissioner Johanson dissented and made negative determinations. Although Commissioner Johanson made negative injury and threat determinations, he joined sections I-V.C. of the majority views, including the related parties analysis. See Views at 3 n.1; Dissenting Views of Commissioner David S. Johanson, EDIS Doc. 837219, at 1.

*Public Version*

an amended complaint after commencing an action to contest the Commission's final injury determinations.[4]  Plaintiffs challenged the Commission's inclusion of Fujifilm Manufacturing USA ("Fujifilm Greenwood"), a U.S. producer of ALPs, in the domestic industry pursuant to the related parties provision and its volume, price effects, and impact findings as contrary to law and/or unsupported by substantial evidence.[5]

On February 18, 2026, the U.S. Court of International Trade, per Judge Jennifer Choe-Groves, issued an opinion granting in part Plaintiffs' Rule 56.2 motion for judgment on the agency record.  The Court remanded the Commission's determinations because it found that the Commission's decision not to exclude domestic producer Fujifilm Greenwood from the definition of the domestic industry pursuant to the related parties provision was not in accordance with law or supported by substantial evidence.[6]  Specifically, the Court found that the Commission's determination that Fujifilm Greenwood qualified as a related party was not in accordance with law because "the Commission failed to discuss the four factors in 19 U.S.C. § 1677(4)(B)(ii)," concerning when a producer and an exporter or importer are to be considered related parties, "in its related parties analysis."[7]  The Court also found that the Commission's related parties analysis was not in accordance with law because "the Commission failed to explain how the facts in this case are similar or different than the example provided in the legislative history," where "{t}he Commission will not consider a related U.S. producer to be a

---

[4] *See generally* Am. Compl., ECF No. 10.
[5] Am. Compl. at ¶¶ 25–45.  The Commission's original views refer to this firm as "Fujifilm Manufacturing USA," but we adopt the Court's naming of the firm as "Fujifilm Greenwood" in these remand views.
[6] *See generally Slip Op.*
[7] Slip Op. at 12.

part of the domestic industry 'where a U.S. producer is related to a foreign exporter and the foreign exporter directs his exports to the United States so as not to compete with his related U.S. producer{.}'"[8]  Finally, the Court found that the Commission "failed to support its determination that Fujifilm Greenwood qualified as a related party with substantial evidence" because "{t}he Commission failed to provide the necessary record evidence to the Court to support the Commission's determination that Fujifilm Greenwood was a related party."[9]

On March 26, 2026, the Commission published notice of its remand proceeding in the Federal Register.  In the notice, the Commission stated that it was not reopening the record, but invited interested parties to submit comments concerning how the Commission could best comply with the Court's remand instructions.[10]  On April 14, 2026, remand comments were filed by Plaintiffs/Respondents Fujifilm North America Corporation ("FNAC"), Fujifilm Corporation ("Fujifilm Japan"), and Fujifilm Printing Plate (China) Co. Ltd., ("Fujifilm China") (collectively, "Fujifilm") and Petitioner/Defendant-Intervenor Eastman Kodak Company ("Kodak"), respectively.[11]

## II.    Adoption of Findings from Our Original Determinations

We have considered the record as a whole in light of the Court's remand instructions and adopt the Commission's original findings, analysis, and conclusions in their entirety with respect to those issues not subject to the Court's remand order, including domestic like

---

[8] Slip Op. at 10 (quoting S. Rep. No. 96-249, at 83 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 469).

[9] Slip Op. at 13–14.

[10] *Aluminum Lithographic Printing Plates From China and Japan*, 91 Fed. Reg. 14708 (Mar. 26, 2026).

[11] Fujifilm's Remand Comments, EDIS Doc. 878893 (Apr. 14, 2026) ("Fujifilm's Comments"); Kodak's Comments on Court Remand, EDIS Doc. 878825 (Apr. 14, 2026) ("Kodak's Comments").

*Public Version*

product, negligibility, cumulation, legal standards, conditions of competition, volume, price, and impact.  We also adopt our original findings, analysis, and conclusions with respect to the definition of the domestic industry, as supplemented by the analysis in these remand views. In accordance with the Court's remand instructions, we provide further explanation of our finding that Fujifilm Greenwood qualifies as a related party under the statute, but that appropriate circumstances do not exist for its exclusion from the domestic industry pursuant to the related parties provision.

## III.  Related Parties

### A.    The Court's Instructions

The Court remanded the Commission's findings that Fujifilm Greenwood qualified as a related party and that appropriate circumstances did not exist to exclude Fujifilm Greenwood from the domestic industry.  In the original determinations, the Commission found that Fujifilm Greenwood qualified as a related party because it was affiliated with: FNAC, a U.S. importer of subject merchandise; Fujifilm Japan, a Japanese producer and exporter of subject merchandise; and Fujifilm China, a Chinese producer and exporter of subject merchandise.[12]  Fujifilm Greenwood's affiliation with FNAC was through a common parent company (Fujifilm's Holding Company) that owned both Fujifilm and FNAC.[13]  The Commission in its original determination also found, however, that appropriate circumstances did not exist for Fujifilm Greenwood's exclusion from the domestic industry because the record indicated that Fujifilm Greenwood was not shielded from subject import competition by virtue of its related party status, *i.e.*, by

---

[12] Views at 11–12.
[13] Views at 12 n. 28.

*Public Version*

virtue of its affiliation with a U.S. importer and subject producers and exporters.  The

Commission explained that Fujifilm Greenwood produced domestically the same ALPs that

FNAC imported from Japan and China, and that Fujifilm Greenwood's domestic production was

supplanted by subject imports, with its domestic production ceasing while its affiliated subject

imports increased their presence in the market.  Additionally, the Commission explained that

excluding Fujifilm Greenwood would mask declines in the domestic industry's performance.[14]

On appeal, Fujifilm challenged the Commission's finding that appropriate circumstances did not

exist to exclude Fujifilm Greenwood from the domestic industry.[15]

The Court concluded that the Commission's related parties analysis was not in

accordance with law and unsupported by substantial evidence for three reasons.[16]  First, the

Court found that the Commission's determination that Fujifilm Greenwood qualified as a

related party was not in accordance with law because "the Commission failed to discuss the

four factors in 19 U.S.C. § 1677(4)(B)(ii)."[17]  Second, the Court found that the Commission's

related party finding was not supported by substantial evidence because it "failed to provide

the necessary record evidence to the Court to support the Commission's determination that

Fujifilm Greenwood was a related party."[18]  On these two issues, the Court has instructed the

---

[14] Views at 15-16.  As mentioned below, Commissioner Kearns maintains that Fujifilm Greenwood's ceasing of domestic production in favor of importing subject merchandise is material injury suffered by the domestic industry, so Fujifilm Greenwood's exclusion from the domestic industry would mask injury to the industry; a result that runs counter to the intended purpose of the statute.

[15] Am. Compl. at ¶¶ 25–29.

[16] *See generally* Slip Op.

[17] Slip Op. at 12.

[18] Slip Op. at 13–14.  Specifically, the Court faulted the Commission for not including in the joint appendix "any information about the ownership structure at the corporate level that would establish the data relied on in Table 3.2 of the Staff Report," presenting information on U.S. producers' ownership, related and/or affiliated firms, including the relevant portions of questionnaire responses (Continued...)

*Public Version*

Commission to explain how Fujifilm Greenwood qualified as a related party under 19 U.S.C. § 1677(4)(B)(ii) and provide the necessary supporting record documents for the Court to review.[19]

Third, the Court found that the Commission's determination that appropriate circumstances did not exist to exclude Fujifilm Greenwood was not in accordance with law because "the Commission failed to explain how the facts in this case are similar or different than the example provided in the legislative history."  The Court reasoned that the facts in this case appear similar to the example of an appropriate case in which a related party should be excluded, "where . . . the foreign exporter directs his exports to the United States so as not to compete with his related U.S. producer."[20]  The Court remanded this issue to the Commission for further consideration or explanation and specifically instructed the Commission to address the example in the legislation history.[21]

### B.    Party Arguments

#### 1.    Kodak's Comments

In its remand comments, Kodak argues that the Commission should continue to include Fujifilm Greenwood in the domestic industry.  First, contending that the Commission should continue to find that Fujifilm Greenwood is a related party under the statute, it highlights record evidence indicating that a "third party," Fujifilm Holdings Corporation, directly or indirectly controls the producer, Fujifilm Greenwood, and the exporters and importer, Fujifilm

---

and a confidential e-mail of November 1, 2023, cited in the Staff Report at 3.3 n.3.  Slip Op. at 14–15; Confidential Staff Report, INV-WW-127 (Oct. 9, 2024) ("CR") at 3.2–3.3 & n.3.

[19] Slip Op. at 12, 16.
[20] Slip Op. at 13.
[21] Slip Op. at 12-13.

*Public Version*

Japan, Fujifilm China, and FNAC, thus satisfying the third factor under 19 U.S.C. § 1677(4)(B)(ii).[22]

Kodak then argues that the Commission should continue to find that appropriate circumstances do not exist to exclude Fujifilm Greenwood from the domestic industry.[23] In Kodak's view, the Commission's focus on whether Fujifilm Greenwood was shielded is consistent with the relevant legislative history, the purpose of which is to reduce any distortions caused by "the inclusion in the domestic industry of a related producer who is being shielded from the effects of the subject imports."[24] Quoting from the Commission's analysis, Kodak argues that Fujifilm did not rely on subject imports to supplement Fujifilm Greenwood's production of the domestic like product but to completely replace such production.[25] Kodak also argues that the Commission should continue to find that Fujifilm Greenwood's exclusion would mask the effects of subject imports on the domestic industry, citing large declines in the domestic industry's capacity, shipments, and employment.[26]

Kodak also urges the Commission to emphasize to the Court that its material injury determinations were not dependent on Fujifilm Greenwood's inclusion in the domestic industry. Kodak points out that the Commission based those determinations on the adverse impact of subject imports on Kodak, and rejected numerous arguments raised by Fujifilm that

---

[22] Kodak's Comments at 2-3. The text of 19 U.S.C. § 1677(4)(B)(ii) is available in section IV.B.1, below.

[23] Kodak's Comments at 3-4.

[24] Kodak's Comments at 4 *citing* Statement of Administrative Action for the Uruguay Round Agreements Act ("SAA"), H.R. Rep. No. 103-316, vol. I at 858 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4190.

[25] Kodak's Comments at 4-5 (quoting Views at 13-16).

[26] Kodak's Comments at 6.

*Public Version*

subject imports did not have an injurious impact on Kodak.[27]  Therefore, Kodak contends that

even if the Commission determines that appropriate circumstances exist to exclude Fujifilm

Greenwood from the domestic industry, the Commission should continue to find that the

domestic industry consisting of Kodak was materially injured by reason of subject imports.[28]

### 2.    Fujifilm's Comments

Fujifilm argues that the Commission should reaffirm that Fujifilm Greenwood qualifies

as a related party in its remand under subsections (II) or (III) of 19 U.S.C. § 1677(4)(B).  In its

view, the record establishes that all four Fujifilm entities that participated in these

investigations are wholly owned by Fujifilm Holdings Corporation, satisfying subsection (II), and

that Fujifilm Holdings Corporation also constitutes a "third party" that "directly or indirectly

controls the producer and the exporter or importer," within the meaning of subsection (III), on

account of its 100 percent ownership of all four Fujifilm entities.[29]

In addressing the example provided in the legislative history, Fujifilm argues that the

Commission should find that the facts in these investigations match the "appropriate" case for

exclusion contemplated by the statute and its legislative history.[30]  With respect to whether the

foreign exporter directed exports so as not to compete with the related U.S. producer, as

contemplated by the legislative history, Fujifilm stresses that there is no evidence indicating

that FNAC caused its subject imports to compete with its domestically produced ALPs, claiming

---

[27] Kodak's Comments at 8-10.
[28] Kodak's Comments at 10.
[29] Fujifilm's Comments at 2-4.
[30] Fujifilm's Comments at 5.

*Public Version*

that it "defies credulity" to find that FNAC – Fujifilm's sole sales arm for domestic and subject imported ALPs in the U.S. market – competed with itself.[31]

With respect to whether Fujifilm Greenwood's production was shielded from subject import competition, Fujifilm argues that FNAC's sourcing decisions were made at the corporate level, through the coordinated substitution of subject imports for Fujifilm Greenwood's domestic production, and not in response to competitive pressure, consistent with the absence of any lost sales or revenues reported by Fujifilm Greenwood.[32] Fujifilm cites *Wabtec Corp. v. United States* to argue that the Commission may not "blindly select" a producer's declining performance without addressing contrary evidence.[33] It also points to pricing data indicating that sales prices for Fujifilm's subject imports were most often higher than the sales prices previously charged for its domestically produced ALPs.[34]

Fujifilm emphasizes that it made the decision to replace Greenwood's production with imports before the period of investigation to rationalize its global capacity.[35] It characterizes its transition from domestic to imported supply as a "carefully calibrated" controlled situation that it deems "the very essence" of the scenario under which "the foreign exporter directs his exports to the United States so as not to compete with his related U.S. producer."[36] Arguing

---

[31] Fujifilm's Comments at 5.

[32] Fujifilm's Comments at 6.

[33] Fujifilm's Comments at 6 (citing *Wabtec Corp. v. United States,* 805 F. Supp. 3d 1326, 1344 (Ct. Int'l Trade 2025) (*citing Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).

[34] Fujifilm's Comments at 6-7.

[35] Fujifilm's Comments at 7-9.

[36] Fujifilm's Comments at 9.

*Public Version*

that the record facts squarely fit with the example contemplated by the legislative history, Fujifilm urges the Commission to exclude Fujifilm Greenwood from the domestic industry.[37]

Finally, Fujifilm urges the Commission to undertake a new material injury analysis based on a domestic industry consisting of only Kodak.  It argues that excluding Fujifilm Greenwood fundamentally changes the "factual predicate" underlying the Commission's original injury analysis, alleging that the increases in subject import volume and market share that drove the Commission's affirmative finding largely reflect Fujifilm's sourcing shift, not the "competitive displacement" of Kodak.  In its view, the Commission must reassess whether subject import volumes were significant to Kodak, whether those imports had adverse price effects for Kodak, and whether they adversely impacted Kodak's condition.[38]

### C.    Analysis

As discussed above, the Court remanded for the Commission to discuss the statutory criteria under which Fujifilm Greenwood qualifies as a related party and to reconsider its determination that appropriate circumstances did not exist to exclude Fujifilm Greenwood from the domestic industry.  The related parties provision, 19 U.S.C. § 1677(4)(B), provides that "if a producer of a domestic like product and an exporter or importer of the subject merchandise are related parties, or if a producer of the domestic like product is also an importer of the subject merchandise, the producer may, in appropriate circumstances, be excluded from the industry."[39]  Thus, the statute sets out a two-step framework.  First, the Commission is to determine whether a producer of a domestic like product is related to an exporter or importer

---

[37] Fujifilm's Comments at 9.
[38] Fujifilm's Comments at 9-10.
[39] 19 U.S.C. § 1677(4)(B).

*Public Version*

of the subject merchandise or is itself an importer of the subject merchandise.[40]  Second, if the

Commission determines that either of these conditions is satisfied, *i.e.*, that the domestic

producer at issue is related to an exporter or importer of the subject merchandise or is itself an

importer of the subject merchandise, the Commission then must determine whether

appropriate circumstances exist for the exclusion of the domestic producer from the definition

of the domestic industry.[41]  As discussed further below, whereas the circumstances under

which the first step of this inquiry may be satisfied are provided by the language of the statute,

*i.e.*, related party status or importation by a domestic producer itself, the second step of the

related parties analysis, "appropriate circumstances" inquiry, rests in the Commission's

discretion based upon the facts presented in each case.[42]  The legislative history and case law

indicate that the purpose and function of this provision is to enable the Commission to exclude

from the definition of the domestic industry a domestic producer who may be benefiting or

shielded from injury caused by the subject imports by virtue of that domestic producer's

affiliation with a U.S. importer or foreign producer of the subject merchandise or by virtue of

the fact that the domestic producer is itself an importer of subject merchandise.[43]  Accordingly,

---

[40] 19 U.S.C. § 1677(4)(B)(ii).

[41] 19 U.S.C. § 1677(4)(B)(i).

[42] SAA at 858 ("Both Commerce and the Commission will have discretion in applying the related party provision to determine whether a producer is related and whether appropriate circumstances exist for excluding such a related producer from the domestic industry.").  *See Torrington Co. v. United States*, 790 F. Supp. at 1168; *Sandvik AB v. United States*, 721 F. Supp. 1322, 1331-32 (Ct. Int'l Trade 1989), *aff'd without opinion*, 904 F.2d 46 (Fed. Cir. 1990); *Empire Plow Co. v. United States*, 675 F. Supp. 1348, 1352 (Ct. Int'l Trade 1987).

[43] SAA at 858 ("{T}he Commission {utilizes the related party provision} to reduce any distortion in industry data caused by the inclusion in the domestic industry of a related producer who is being shielded from the effects of the subject imports.").  *USEC, Inc. v. United States*, 25 CIT 49, 61, 132 F. Supp. 2d 1, 12 (2001) ("{T}he provision's purpose is to exclude from the industry headcount domestic producers substantially benefitting from their relationships with foreign exporters."), *aff'd without*
(Continued...)

*Public Version*

the Commission generally has considered these criteria (*i.e.*, whether a domestic producer may be benefitting or shielded from injury caused by subject imports), as well as evidence probative of these criteria, such as a domestic producer's financial performance, in determining whether "appropriate circumstances" for exclusion exist under the statute.

Having reconsidered these issues pursuant to the Court's instructions, we again find that Fujifilm Greenwood qualifies as a related party, but that appropriate circumstances do not exist for its exclusion from the domestic industry pursuant to the related parties provision.

### 1.      Whether Fujifilm Greenwood Qualifies as a Related Party

The first step is to consider whether Fujifilm  qualifies as a related party.  Accordingly, we first respond to the Court's instruction that the Commission discuss the four independent bases whereby a domestic producer may qualify as a related party under 19 U.S.C. § 1677(4)(B)(ii):

For purposes of clause (i), a producer and an exporter or importer shall be considered to be related parties, if—

> (I) the producer directly or indirectly controls the exporter or importer,
>
> (II) the exporter or importer directly or indirectly controls the producer,

---

*opinion*, 34 F. App'x 725 (Fed. Cir. 2002); *Allied Mineral Prods., Inc. v. United States,* 28 CIT 1861, 1864 (2004) ("The most significant factor considered by the Commission in making the 'appropriate circumstances' determination is whether the domestic producer accrued a substantial benefit from its importation of the subject merchandise"); *Empire Plow Co. v. United States*, 11 CIT 847, 853, 675 F. Supp. 1348, 1353-54 (1987) ("The {U.S. Senate report for the Trade Agreements Act of 1979} displays an intent to exclude from the industry headcount domestic producers which, due to a relationship with the foreign producer, benefit from the foreign exporter{.}").

14

*Public Version*

> (III) a third party directly or indirectly controls the producer and the exporter or importer, or
>
> (IV) the producer and the exporter or importer directly or indirectly control a third party and there is reason to believe that the relationship causes the producer to act differently than a nonrelated producer.
>
> For purposes of this subparagraph, a party shall be considered to directly or indirectly control another party if the party is legally or operationally in a position to exercise restraint or direction over the other party.

Per this statutory language, only one of these four relationships is necessary for a domestic producer to be considered a related party, although a domestic producer may have more than one of these relationships. In the original investigations, we found that "{o}ne U.S. producer, Fujifilm Greenwood, qualifies as a related party because it is affiliated with Fujifilm North America, a U.S. importer of subject merchandise from Japan and China, and Fujifilm China and Fujifilm Japan, foreign producers and exporters of subject merchandise in China and Japan, through common control."[44] As support, we relied on information in the staff report indicating that Fujifilm Holdings Corporation was the ultimate parent company of Fujifilm Greenwood, FNAC, and Fujifilm Japan by virtue of its 100.0 percent ownership of each entity.[45]

The specific provision under which Fujifilm Greenwood qualifies as a related party is 19 U.S.C. § 1677(4)(B)(ii)(III). This provision refers to the situation when "a third party directly or indirectly controls the producer and the exporter or importer." Here, the record indicates that the third party directly or indirectly controls the U.S. producer Fujifilm Greenwood and a U.S. importer of subject merchandise and foreign producers and exporters of subject merchandise.

---

[44] Views at 11-12.
[45] Views at 11-12 & n.28.

*Public Version*

Specifically, the questionnaire responses and e-mail correspondence, consistent with the information in the staff report, indicate that a third party, Fujifilm Holdings Corporation, directly controlled the producer, Fujifilm Greenwood, the exporter, Fujifilm Japan, and the importer, FNAC, based on its 100.0 percent ownership of each entity, and that it also controlled exporter Fujifilm China through its ownership of Fujifilm Japan, which owned 100.0 percent of Fujifilm China.[46]  We consider Fujifilm Holdings Corporation "legally in a position to exercise restraint and direction over" Fujifilm Greenwood, FNAC, and Fujifilm Japan by virtue of its 100.0 percent ownership of all three firms, thereby satisfying the statute's definition of control.  Both Fujifilm and Kodak agree that Fujifilm Greenwood qualifies as a related party under the statute,[47] and neither party argued otherwise during the original investigations.[48] [49]

---

[46] Views at 11-12 & n.28; CR at Table 3.2, 3.3 & n.3; *See also* U.S Producer Questionnaire of Fujifilm Greenwood (Fujifilm Manufacturing USA, Inc.), EDIS Doc. 826135 at 5-6, U.S. Importer Questionnaire of FNAC (Fujifilm North America Corp., Graphic Comm. Div.), EDIS Doc. 826696 at 6-7, Foreign Producer Questionnaire of Fujifilm Japan (Fujifilm Corporation), EDIS Doc. 826134 at 5-6; and Foreign Producer Questionnaire of Fujifilm China (Fujifilm Printing Plate (China) Co., Ltd), EDIS Doc. 826314 at 5-6, *and* E-mail Correspondence Between Staff and Fujifilm's Economic Advisor, EDIS Doc. 807681.

[47] Fujifilm's Comments at 2-4; Kodak's Comments at 2-3.

[48] *See* Views at 12-13.

[49] In accordance with the Court's remand instructions, we have appended to these remand views copies of the relevant pages from the questionnaire responses of Fujifilm Greenwood, FNAC, Fujifilm Japan, and Fujifilm China that served as the source documents for the information in Table 3.2 of the staff report.  We acknowledge our typographical error in the original determinations that incorrectly cited Table 3.3, rather than Table 3.2.  *See* Slip Op. at 11 n.3.  We have also appended a copy of the e-mail correspondence between Commission staff and Fujifilm's economic advisor that served as the source document for the information in footnote 3 on page 3.3 of the staff report.  Fujifilm has consented to the public disclosure of these documents.  Correspondence with Fujifilm's Counsel, EDIS Doc. 881643 (May 7, 2026).

In addition, we respectfully submit that in Commission investigations, staff reports traditionally represent authoritative compilations of the record evidence collected, which parties rely upon to make their arguments and the Commission relies upon as support for the analyses contained in its determinations.  As such, courts have long recognized that the Commission may support its findings with substantial evidence by citing the relevant evidence contained in the staff report.  In this case, the Commission followed its traditional practice of including in the joint appendix those pages and tables (Continued...)

*Public Version*

### 2.    Whether the Facts Present an Appropriate Case for Exclusion

We next further explain our finding that appropriate circumstances do not exist for

Fujifilm Greenwood's exclusion from the domestic industry.  In particular, we further explain

this finding in light of the example given in the legislative history whereby "{t}he Commission

will not consider a related U.S. producer to be a part of the domestic industry 'where a U.S.

producer is related to a foreign exporter and the foreign exporter directs his exports to the

United States so as not to compete with his related U.S. producer{.}'"[50]

In the original investigations, we found that appropriate circumstances did not exist to

exclude Fujifilm Greenwood from the definition of the domestic industry because the record

did not indicate that Fujifilm Greenwood was shielded from injury caused by subject imports by

virtue of its affiliation with importer FNAC or subject producers Fujifilm Japan and Fujifilm

China.[51]  Rather, we found that subject merchandise imported by Fujifilm Greenwood's

affiliated importer FNAC were the same products domestically produced by Fujifilm

---

from the staff report cited in its brief, as well as surrounding pages as necessary to provide context.  The Commission does not normally provide the source documents staff used to generate those pages and tables because doing so is superfluous, given that staff reports faithfully compile and replicate information from the source documents.  Indeed, parties have ample opportunity during an investigation to bring mistakes in a staff report to the Commission's attention so that they may be corrected.

Submitting such source documents with the joint appendix could also prove unduly burdensome in some cases.  Although the source documents for the data in Table 3.2 of the staff report for this case consisted of only four questionnaire responses, many tables contained in the Commission's staff reports are compiled from dozens or even hundreds of questionnaire responses.  Submitting the source documents for every staff report table that is cited in a Commission response brief could therefore entail compiling and submitting hundreds or thousands of pages of additional material, imposing a substantial burden on the Commission's attorneys and paralegals.  For this reason, when the Court has been interested in reviewing particular record documents that were not submitted with the administrative record or appendix to any brief, often it has issued a letter instructing the Commission to file the record documents with the Court.  We respectfully submit that this procedure may serve as an efficient means of providing the Court with any additional record documents it requires for its review.

[50] Slip Op. at 10 (quoting S. Rep. No. 96-249, at 83 (1979), *reprinted in* 19 U.S.C.C.A.N. 381, 469).

[51] Views at 14-16.

BUSINESS PROPRIETARY INFORMATION
SUBJECT TO PROTECTIVE ORDER REDACTED

*Public Version*

Greenwood.[52]  We explained that as Fujifilm Greenwood's U.S. production and shipments declined, the volume of cumulated subject imports [ ███████████ ] increased substantially, indicating that Fujifilm Greenwood's domestic production was supplanted by affiliated subject imports.[53]

We also found that the exclusion of Fujifilm Greenwood from the definition of the domestic industry would skew the data for the domestic industry.  We explained that where subject merchandise imported by an affiliate replaces the domestic production of a domestic producer, the exclusion of that domestic producer from the definition of the domestic industry would skew the data for the domestic industry and potentially mask injury.  Specifically, here, we noted that as Fujifilm Greenwood's market share decreased from [ ██ ] percent in 2021 to [ ██ ] percent in 2022, its shipments and financial performance deteriorated as well, and concluded that Fujifilm Greenwood's exclusion from the domestic industry would mask declines in the domestic industry's market share, output, and financial performance during the period of investigation.[54]

We now wish to further explain why, in our view, appropriate circumstances do not exist to exclude Fujifilm Greenwood from the definition of the domestic industry and, in particular, address the Court's instruction to explain how the facts in this case are similar or different than the example provided in the legislative history in which a related party may be excluded, "where . . . the foreign exporter directs his exports to the United States so as not to

---

[52] Views at 15.
[53] Views at 15.
[54] Views at 15.

*Public Version*

compete with his related U.S. producer."[55]  We understand this to be an example of how a domestic producer's affiliation could act to shield the domestic industry from the effects of subject import competition, which is not the case here.

The record shows that Fujifilm Greenwood's affiliated importer and foreign exporters did not direct their imports and exports so as not to compete with Fujifilm Greenwood.  Such would be the case, for example, if the Fujifilm Greenwood's affiliated foreign exporters made various types of ALP products but chose (in an effort to avoid harm to its U.S. investments) to export to the United States only those types of ALP products that Fujifilm Greenwood did not produce but that other U.S. producers did produce.  Were that so, the foreign affiliates' exports would compete for sales of those types of ALPs with other domestic producers but not with Fujifilm Greenwood; thus exporting in a way that shielded Fujifilm Greenwood from the foreign affiliates subject imports.

Here, however, the record shows, and Fujifilm acknowledges in its comments on remand,[56] that Fujifilm's exports were intended to supplant Fujifilm Greenwood's domestic production.  By supplanting Fujifilm Greenwood's domestic production, Fujifilm Greenwood's foreign affiliates were not directing exports so as not to compete with Fujifilm Greenwood.  Rather, these exports were directly substitutable for Fujifilm Greenwood's production and were displacing that production.  Thus, Fujifilm Greenwood's production was not shielded from competition with subject imports by virtue of its affiliation with Fujifilm and Fujifilm

---

[55] Slip Op. at 13.
[56] Fujifilm's Comments at 6.

*Public Version*

Greenwood's domestic shipments and performance declined as Fujifilm's subject imports increased.[57]

Although Fujifilm contends that the coordinated action of Fujifilm Greenwood exiting U.S. production as imports from its affiliated foreign suppliers increased implies a situation "where . . . the foreign exporter direct{ed} his exports to the United States so as not to compete with his related U.S. producer,"[58] we firmly disagree.  As discussed, Fujifilm's decision to substitute subject imports for Fujifilm Greenwood's production was detrimental to Fujifilm Greenwood's production, leading to the eventual closure of the Greenwood facility.  This intentional detrimental effect is the opposite of shielding.

The purpose and function of the related parties provision is "to reduce any distortion in industry data caused by the inclusion in the domestic industry of a related producer who is being shielded from the effects of the subject imports" or its domestic production operations

---

[57] Views at 14-16.  Fujifilm's argument in its remand comments that "{i}t defies credulity to maintain that FNAC competes with itself" given that FNAC was responsible for selling both subject and domestic ALPs, misses the point.  Fujifilm's Comments at 5.  The focus of the Commission's injury analysis is the domestic industry, not "affiliated sales arms" that import subject merchandise. *See* 19 U.S.C. §§ 1677(4)(A), 1677(7)(C)(iii).  So, while it is not in dispute that FNAC and Fujifilm Japan were importing and exporting because it was presumably beneficial to those entities, it was not beneficial to Fujifilm Greenwood's domestic production operations whose shipments declined as its domestic production was replaced by subject imports.

[58] Slip Op. at 13.

*Public Version*

otherwise benefit.[59]  Courts have repeatedly recognized the centrality of this overarching

principal.[60] [61]

The reason that Congress would intend for the Commission to exclude a producer from

the domestic industry in the given example, "where a U.S. producer is related to a foreign

exporter and the foreign exporter directs his exports to the United States so as not to compete

with his related U.S. producer," is because the shielded related producer is not exposed to any

adverse effects of those subject imports in the U.S. market, whereas other domestic producers

in the domestic industry that do not have the same relationship may have been adversely

affected by the imports.  In such a scenario, as outlined above, the inclusion of the shielded

domestic producer's data in the domestic industry data set as a whole may skew the industry

data in a way that masks injury to industry.  Importers, exporters, or third parties that control a

related producer typically would have an economic incentive to maximize the producer's

financial performance by ensuring that their dumped and subsidized exports do not compete

with the producer's domestic production.  For example, if a shielded domestic producer

performed better than the domestic producers that were exposed to subject import

---

[59] Slip Op. at 10 (quoting SAA, H.R. Doc. No. 103-316, vol. I, at 858 (1994)).  A domestic producer may benefit from subject imports, for example, where the scope of an investigation includes both upstream and downstream products and a domestic producer imports in-scope upstream product to produce downstream in-scope product. In such a situation, the domestic producer's domestic production operations would benefit from the dumped or subsidized imports, possibly in a way that allows it to lower costs and perform better than other domestic producers making the aggregate performance of the domestic industry appear stronger.  *See*, *e.g.*, *Forged Steel Fittings from India and Korea,* Inv. Nos. 701-TA-631 and 731-TA-1463-1464 (Final), USITC Pub. 5137 at 12-14.

[60] *USEC, Inc. v. United States*, 25 CIT 49, 61, 132 F. Supp. 2d 1, 12 (2001), *aff'd without opinion*, 34 F. App'x 725 (Fed. Cir. 2002); *Allied Mineral Prods., Inc. v. United States,* 28 CIT 1861, 1864 (2004); *Empire Plow Co. v. United States*, 11 CIT 847, 853, 675 F. Supp. 1348, 1353-54 (1987).

[61] In Commissioner Kearns's view, the purpose of the related parties provision is to exclude a related party that was shielded or benefiting from subject imports in such a way that the related party's inclusion in the domestic industry would mask injury to the industry.

*Public Version*

competition and the data of all U.S. producers were aggregated, the inclusion of the shielded

producer's data in the domestic industry data set would create the appearance that the

domestic industry was less injured than if only the domestic producers fully exposed to subject

import competition were considered, or even suffered no injury when in fact the domestic

producers competing with subject imports did suffer injury at the hands of such imports.  This is

the "distortion in industry data caused by the inclusion in the domestic industry of a related

producer who is being shielded from the effects of the subject imports" that, in our view,

Congress intended for the Commission to reduce through application of the related parties

provision.[62]

The facts on the record of these investigations represent the exact opposite of the

example provided in the legislative history.  As the Commission found in its original

determinations, the record does not indicate that Fujifilm directed its exports to the United

States so as not to compete with Fujifilm Greenwood, thereby shielding it from subject import

competition and causing its performance to be superior to that of other domestic producers.

Rather, Fujifilm exported to the United States the same ALP products that were produced

domestically by Fujifilm Greenwood during the period of investigation.[63]  Consistent with the

---

[62] SAA at 858.

[63] Views at 15.  As additional support for its argument that FNAC's imports did not compete with Fujifilm Greenwood's domestically produced ALPs, Fujifilm points to sales records indicating that prices for its subject imports were more often higher than the prices previously charged for its domestically produced ALPs.  Fujifilm's Remand Comments at 6-7, *citing* FNAC U.S. Importer Questionnaire at Additional Explanation, Attachments A, B, and C.  We find this evidence unpersuasive.  Irrespective of FNAC's sales prices for Fujifilm's domestic and subject ALPs, the record shows that dumped and subsidized ALPs from China and Japan increasingly replaced Fujifilm Greenwood's domestic production of the same products.  Views at 15.  To the extent sales prices for Fujifilm Greenwood's ALP products were lower than those of subject imports, they did not prevent the facility's declining performance and ultimate closure.

BUSINESS PROPRIETARY INFORMATION
SUBJECT TO PROTECTIVE ORDER REDACTED

*Public Version*

absence of any shielding, the record indicated that "{Fujifilm Greenwood's} production and shipments declined" as "the volume of cumulated subject imports," nearly all from FNAC, increased, and "its financial performance declined as well{,}"[64] indicating that Fujifilm Greenwood's domestic production of ALPs was supplanted by subject imports from its affiliate. Tellingly, Fujifilm began the period of investigation [          ] domestic producer of ALPs and ended the period with no domestic production.[65]  Therefore, this is not a case in which including Fujifilm Greenwood in the domestic industry would mask injury by making the industry appear less injured than if only the domestic producers fully exposed to subject import competition were considered.  To the contrary, as the Commission explained, Fujifilm Greenwood's exclusion from the domestic industry would actually mask declines in the domestic industry's performance caused by subject imports.[66]  Excluding a related domestic producer whose performance declined as its production was supplanted by dumped and subsidized imports from a related exporter would make the domestic industry appear less injured, turning the purpose of the related parties provision on its head.

Nor did the Commission focus on Fujifilm Greenwood's declining performance to the exclusion of other evidence, as Fujifilm argues in its remand comments.  In its related parties analysis, the Commission acknowledged Fujifilm's explanation that it increased imports to replace the supply from its Greenwood facility that it closed as part of corporate strategy to reallocate production globally in light of macroeconomic conditions. However, Fujifilm's stated reason for supplanting domestic production with subject imports does not change the fact that

---

[64] Views at 15.
[65] Views at 13-15.
[66] Views at 14-15.

*Public Version*

Fujifilm's decision to replace Greenwood's production with subject imports was detrimental to Fujifilm Greenwood and the domestic industry.[67]  Moreover, Fujifilm's decision to replace Fujifilm Greenwood's domestic production with subject imports is in itself an admission that its domestic ALPs operations were not shielded from subject imports.  As the Commission explained, the record showed that Fujifilm Greenwood's domestic production was not shielded from competition with subject imports and that its performance declined as subject imports increased.  Even in the absence of any lost sales or revenues reported by Fujifilm Greenwood, the record showed that Fujifilm Greenwood's sales and revenues declined as its production was increasingly replaced by the same types of ALPs imported from China and Japan.

Finally, we note that Fujifilm's inclusion in the domestic industry was immaterial to Commission's affirmative injury determinations, which were based on the impact of subject imports on the domestic industry after Fujifilm Greenwood had ceased production (*i.e.,* Kodak). Specifically the Commission based its significant subject import underselling finding on a comparison of pricing data reported by FNAC and Kodak for top ten customers and found that the underselling enabled subject imports to gain sales and market share from the domestic industry in 2023 and interim 2024, *after* Greenwood had closed.[68]  In finding that subject imports had a significant adverse impact, we "set aside the reason for the Greenwood facility's closure" and found that low-priced subject imports caused Kodak to lose sales and market share to subject imports in 2023 and interim 2024 and prevented it from gaining additional

---

[67] Commissioner Johanson did not find the domestic industry to be injured or threatened with material injury.  USITC Pub. No. 5559 at 57-72 (Dissenting Views of Commissioner David S. Johanson).

[68] Views at 46-47.  Commissioner Johanson did not join this section of the majority's views and so does not join the remainder of this paragraph.

*Public Version*

sales and market share over the POI.[69]  Commissioner Kearns also holds the separate view that Fujifilm's decision to supplant domestic ALPs with subject imports constitutes material injury by reason of subject imports.[70]  Accordingly, in its remand comments, Fujifilm mischaracterizes the Commission's impact analysis in arguing that Fujifilm Greenwood's exclusion from the domestic industry would have altered the Commission's affirmative determinations.[71]

For all of these reasons, and those discussed in the original views, we find that appropriate circumstances do not exist to exclude Fujifilm Greenwood from the domestic industry pursuant to the related parties provision.

## IV.    CONCLUSION

For the foregoing reasons, we determine that an industry in the United States is materially injured by reason of subject imports of ALPs from China and Japan found by Commerce to be sold in the United States at less than fair value and subsidized by the government of China.

---

[69] Views at 57-58.

[70] Views at 58 n.236.

[71] In its remand comments, Fujifilm claims that "{e}xcluding Fujifilm-Greenwood fundamentally changes the factual predicate on which the Commission's original injury analysis rested" because "{t}he increases in import volume and market share that drove the Commission's affirmative finding largely reflect Fujifilm's intra-corporate sourcing shift, not competitive displacement of Kodak."  Fujifilm's Comments at 10.  This argument is based on a mischaracterization of the Commission's impact analysis. The Commission recognized that the "subject imports' gain in market share reflects, in part, Fujifilm's decision to replace its domestic production with subject imports," and did not question Fujifilm's stated reason for the shift.  Views at 56-57.  Rather than relying on that market share gain for its affirmative determinations, the Commission found that "the availability of low-priced subject imports caused Kodak to lose sales and market share to subject imports in 2023 and interim 2024 and prevented Kodak from gaining additional sales and market share over the POI after the closure of Greenwood in 2022."  *Id.* at 57-58.  Thus, contrary to Fujifilm's argument, the Commission's affirmative determinations were not based on volume trends caused by "Fujifilm's intra-corporate sourcing shift" but on the "competitive displacement of Kodak" by low-priced subject imports.